IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFF MERKLEY,<br><br>        *Plaintiff*,<br><br>        v.<br><br>DONALD J. TRUMP et al.,<br><br>        *Defendants*. | No. 17-cv-255 (TSC)<br><br>Electronically Filed<br><br>Hon. Amy Berman Jackson |

## PROPOSED ORDER

The Court has reviewed Plaintiff's Motion for Temporary Restraining Order and all papers submitted in support of or in opposition to the motion and conducted such proceedings as appropriate given the time constraints in this matter. Based upon this review, the Court finds that the plaintiff has satisfied the standards for issuance of the temporary restraining order set out below.

The Court makes the following findings of fact and conclusions of law based on the current record:

1.      This action was filed on September 26, 2018 by Plaintiff, Senator Jeff Merkley of Oregon. The Defendants are President Donald Trump, Leader Mitch McConnell and Chairman Charles Grassley, private lawyer William Burck, the Secretary and Sergeant of Arms of the Senate, and the National Archives.

2.      On October 2, 2018, Plaintiff filed a motion for a temporary restraining order against Defendants and sought associated declaratory relief.

3. To obtain a temporary restraining order, a party must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. As described below, Plaintiff has shown each of these four elements.

**Likelihood of Success on the Merits**

4. Article II, Section 2 of the United States Constitution states that the President "shall nominate, and by the Advice and consent of the Senate, shall appoint… Judges of the [S]upreme Court." The common current phrase for advice and consent is "with the deliberation and approval of the Senate."

5. The Senate's paramount constitutional duty in the course of providing advice and consent is to satisfy itself that the nominee is fully qualified by virtue of education, experience, integrity and character to receive a lifetime appointment based upon the review of a complete record. *See Charles Mathias, Jr. Advice and Consent: The Role of the United States Senate in the Judicial Selection Process*, 54 U. Chi. L. Rev. 200, 206-07 (1987).

6. Plaintiff has alleged in the Complaint three acts of deliberate and substantial interference by the executive branch into the U.S. Senate's advice and consent constitutional duties with respect to the current nomination for the vacancy on the United States Supreme Court. Plaintiff seeks relief through a temporary restraining order as to two of them.

7. Through a declaration, copies of documents, and news media reporting, Plaintiff has presented evidence that the executive branch outsourced the professional, neutral process of collecting and producing documents for a Supreme Court nominee from the National Archives to a private attorney, William Burck. Mr. Burck's role is not only unprecedented, but rife with conflicts of interests. Mr. Burck informed the Chairman of the U.S. Senate Judiciary Committee

Charles Grassley and his committee members that the White House and the Department of Justice had decided to withhold, based on executive privilege, over 100,000 pages responsive to the Committee's requests for certain documents from the period when the nominee served as an associate counsel and senior associate counsel under former President George W. Bush. Defendant Burck and/or other officials acting at the request of President Trump failed to produce a privilege log or similar document that would permit evaluation of the legitimacy of the withholding of the documents on the basis of the sweeping and broad invocation of executive privilege. Defendant Trump also failed to indicate the basis for failing to disclose documents concerning the nominee's tenure as Staff Secretary under former President George W. Bush.

8. It is unprecedented for the executive branch to invoke executive privilege as a basis for withholding a large percentage of documents sought by the Senate Judiciary Committee in the course of exercising its advice and consent duties. And the involvement of Defendant Burck, a private attorney, in the process exacerbates the suspect nature of the process used to determine which documents would be withheld based on executive privilege.

9. Plaintiff has shown a probability of prevailing on the merits that the Defendant Trump and Defendant Burck may not engage in such an unprecedented attempt to withhold documents based on executive privilege without Defendant Trump producing a privilege log or similar document identifying the withheld documents and the bases for the withholding. As with privilege logs produced in litigation, any such logs should contain sufficient information that the propriety of the withholding can be determined based on the information in the log.

10. Defendant Burck also informed the Chairman of the Senate Judiciary Committee and his committee members that about 147,000 pages of documents responsive to the Committee's requests for certain documents from the period when the nominee served as an

associate counsel and senior associate counsel under President George W. Bush had been designated as "Committee Confidential." Plaintiff, like other Senators who are not on the Judiciary Committee, has extremely limited access to the documents and may not use them to influence the thinking of other Senators or the public about the current nominee.

11.     It also is unprecedented for the executive branch to designate such a large volume of otherwise relevant documents as "Committee Confidential."

12.     Plaintiff has shown a probability of success on the merits that the Defendants may not engage in such sweeping use of "executive privilege" claims and "Committee Confidential" designations without Plaintiff having an opportunity to, at minimum, review the privilege log and assess the validity of the designations.

13.     Plaintiff has established he has standing by showing that he has suffered injury in fact with a concrete injury that is not hypothetical, that derives from the defendants' conduct, and is redressable. *See Lujan v Defenders of Wildlife*, 504 U.S. 555(1992). Senator Merkley has suffered personal injuries as well as an institutional injury of the nature cognizable under *Coleman v. Miller*, 307 U.S. 433 (1939). *See also Blumenthal v. Trump*, 2018 U.S. Dist. LEXIS 167411 (D.D.C. 2018). The courts have authority to resolve disputes such as this one over the separation of powers. *Marbury v. Madison*, 5 U.S. 137 (1803); *see also Comm. On Oversight & Gov't Reform v Holder*, 979 F. Supp. 1, 12 (D.D.C. 2013) ("the final word would elevate and fortify the executive branch at the expense of the other institutions that are supposed to be its equal.").

**Plaintiff Will Suffer Immediate, Irreparable Harm If a TRO Is Not Granted**

14.     If a TRO is not granted, Defendants will likely commence with a vote on the nominee within the next few days, thereby denying Plaintiff the opportunity to resolve the constitutional issues raised in his complaint.

15.     The Plaintiff is more prejudiced by the Defendants' actions than are members of the Senate Judiciary Committee.  They can review a limited number of documents that were designated as "Committee Confidential," which he cannot effectively do.

16.     If a TRO is not granted, the Plaintiff will lose the ability to use the full public record to try to persuade other Senators to adopt his position on the current nominee. The Plaintiff will not have the benefit of a full record in communicating with his constituents about this nomination which, as with all Supreme Court nominations, is a matter of great public interest.

17.     If a TRO is not granted, the Senate's ability to hold a constitutionally meaningful vote on the current nominee will be nullified as a result of the inability of Plaintiff and other Senators to properly fulfill their advice and consent duties.

**The Balance of Equities and the Public Interest**

18.     President Trump has nominated Judge Kavanaugh for a lifetime appointment on the nation's highest court.  The high nature of the position for which he has been nominated makes it important that Senators have all relevant information before them prior to making a decision.

19.     Without entry of the requested TRO, a precedent will be established permitting a president and his/her designees inside the executive branch from withholding documents based on executive privilege that the Senate regularly and routinely seek in fulfilling its advice-and-consent role without providing a privilege log or other meaningful information to help assess or

check the appropriateness of the withholding. This will permanently impair the ability of the Senate to act as an effective check on the President's appointment authority.

20. In a few short weeks, the National Archives, which has been a neutral arbiter of the release of relevant documents regarding Supreme Court nominees for over fifty years, will have completed their review and be prepared to release the nominee's documentary record requested by Defendant Grassley. The impending disclosure of documents by the National Archives can help Plaintiff and the Senate fulfill their advice and consent obligation.

### The Temporary Restraining Order

The Court grants Plaintiff's request for relief as follows:

a. Defendant Trump shall promptly provide a document identifying the materials withheld individually or by reasonably precise categories with sufficient detail for the parties and the Court to ascertain whether the executive privilege designation was properly asserted as to each document or category of documents. This document should be in the form of a privilege log, such as often prepared during discovery in civil litigation. The presumption shall be in favor of production of documents and the burden of establishing privilege is on Defendant Trump. If during the course of preparing this document Defendants determine that any documents were erroneously withheld, they shall immediately produce them to the United States Senate. If, based on information reflected on the privilege log, the Plaintiff challenges any of the designations, the Court will determine if the challenged documents have been misclassified.

b. The Plaintiff, one member of his staff, and his counsel in this litigation may have reasonable access to the documents designated as "Committee Confidential." The parties shall promptly work out reasonable safeguards to prevent any disclosure of confidential material. If

the Plaintiff challenges any of the designations, the Court will determine if the challenged documents have been misclassified.

c. All parties shall be available for a Rule 16 pretrial conference on October __, 2018. The parties shall meet and confer before then concerning the matters to be covered in a Rule 16 conference and the matters identified in Fed. R. Civ. P. 26(f).

d. Defendants would not be substantially injured by issuance of the limited temporary restraining order set forth above. Accordingly, the Court concludes that payment of a security by Plaintiff pursuant to Fed. R. Civ. P. 65(c) is unnecessary at this time.

e. Nothing herein prevents Plaintiff from seeking further relief if he is dissatisfied with the actions taken by the Senate.

f. The findings and conclusions above are solely for the purposes of the motion for a temporary restraining order and shall not be law of the case in subsequent proceedings, if any, in this matter.

So ordered.

_____    _____
                                   Judge Amy Berman Jackson, U.S. District Court