IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFF MERKLEY,<br><br>   *Plaintiff*,<br><br>  v.<br><br>DONALD J. TRUMP et al.,<br><br>   *Defendants*. | No. 18-cv-2226 (ABJ)<br><br>Electronically Filed<br><br>Hon. Amy Berman Jackson |

## MOTION FOR EXPEDITED HEARING[1]

Plaintiff Senator Jeff Merkley, by and through his counsel, respectfully moves this Court for an expedited hearing on his motion for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65. Under current scheduling, Defendants' Consolidated Memorandum in Support of Its Opposition to Plaintiff's Motion for Temporary Restraining Order and Motion to Dismiss is due by 5:00 PM on Friday, October 5, 2018 and Plaintiff's Consolidated Reply Memorandum in Support of Its Motion for Temporary Restraining Order and Opposition to Defendants' Motion to Dismiss is due by noon on Monday, October 8, 2018.[2] A hearing on Plaintiff's Motion for Temporary Restraining Order is then set for Tuesday, October 9, 2018.

---

[1] Under Local Rule 7(m), Plaintiff has contacted counsel for Defendants regarding this motion. On behalf of his clients, Mr. Pezzi has stated that he opposes this motion and intends to file a short opposition promptly. Mr. Landau responded that he also opposes this motion.

[2] Any submission from Defendant William Burck is due by 9:00 AM on Monday, October 8, 2018, however Defendant Burck is not implicated in Plaintiff's motion for a temporary restraining order.

1

Since Plaintiff's October 3, 2018 conference with the Court, Defendant McConnell has petitioned for cloture on Judge Brett Kavanaugh's nomination.[3] This new factual development makes it extremely likely that a vote will be held on his nomination on Saturday, October 5, 2018. Once the vote is held, Plaintiff's opportunity to satisfy his constitutional obligation to provide "advice and consent" will be permanently extinguished, and many aspects of this case will be moot. *Cf. League of Women Voters of the United States v Newby*, 838 F 3d 1, 9 (D.C. Cir. 2016) (in some situations, "there can be no do over and no redress").

1. This is a suit brought under the Advice and Consent Clause of the United States Constitution that challenges executive branch interference in the Senate's deliberation on the Supreme Court nomination of Judge Brett Kavanaugh. (Supplemental Declaration of Senator Merkley ¶¶ 2-6).

2. The conduct at issue is unprecedented, including the vast invocation of executive privilege and "committee confidential" designations as well as the involvement and meddling of private actors, with conflicts of interest, in the advice and consent process. (Merkley Supp. Dec. ¶¶ 1, 8-12)

3. "It is well established that district courts enjoy broad discretion when deciding case management and scheduling matters, a discretion that extends to determining how and in what order cases should be heard and determined." *Florida v. United States*, 820 F. Supp. 2d 85, 89 (D.D.C. 2011) (citation omitted) (*citing In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003); *McSheffrey v. Exec. Office for the United States Attys.*, No. 00-5268, 2001 U.S. App. LEXIS 13898 at *1

---

[3] During the October 3, 2018 hearing, the Court requested that the parties file a notice if the Senate schedule regarding the confirmation process were formalized. *See* (Oct. 3, 2018 Hr'g. Tr. at 27).

(D.C. Cir. May 4, 2001) (per curiam)). Under this general principle, courts have granted motions for expedited hearings on temporary restraining orders when there is an imminent threat of irreparable harm absent such a hearing. *See, e.g.*, *Curtis v. Fischer*, No. 08-CV-900S, 2008 WL 5218295, at *1 (W.D.N.Y. Dec. 11, 2008); *Mauvais v. Herisse*, No. CIV.A. 13-13032-GAO, 2013 WL 6383930, at *2 (D. Mass. Dec. 4, 2013).

4. New facts have arisen since the October 3, 2018 scheduling conference. That which Plaintiff anticipated has now become fact: on the evening of October 3, 2018, Defendant McConnell filed a petition for a "cloture vote," which would allow such a vote to take place on Friday, October 5 and a final vote to take place 30 hours later on Saturday, October 6. *See* https://www.congress.gov/nomination/115th-congress/2259; *U.S. Senate Republicans Set Kavanaugh Procedural Vote For as Early as Friday*, N.Y. Times (Oct. 3, 2018), *available at* https://www.nytimes.com/reuters/2018/10/03/us/politics/03reuters-usa-court-kavanaugh-cloture.html. While Defendant McConnell had informally vowed to hold a vote on the nomination this week, yesterday's action now makes the vote real and imminent, and not merely speculative or hypothetical. Clare Foran, *McConnell takes key step toward vote on Kavanaugh nomination*, CNN (Oct. 3, 2018), *available at* https://www.cnn.com/2018/10/03/politics/mcconnell-kavanaugh-nomination-vote/index.html?utm_term=image&utm_source=twCNN&utm_content=2018-10-04T02%3A12%3A38&utm_medium=social.

5. Plaintiff comes to this Court as a last resort, and refrained from doing so until the nominee was voted out of Committee and turned over for deliberation by the full

Senate, thus directly obstructing his constitutional role. (Merkley Supp Dec. ¶ 21-22). Once the vote is taken, Plaintiff's ability to comply with the Constitution's advice and consent process will be permanently extinguished. Plaintiff believes that a limited order from this Court has the potential to positively impact the confirmation deliberation process, even if issued shortly before a vote on Judge Kavanaugh is scheduled. (Supp. Merkley Dec. ¶ 23).

Wherefore, Plaintiff requests that this Court grant an expedited hearing for a temporary restraining order to take place after 5 p.m. on Friday October 5, 2018, or alternatively, on the morning of October 6, 2018. Plaintiff makes this request recognizing that a hearing would be held in the absence of its responsive submission.

Dated this 4th day of October, 2018.

RESPECTFULLY SUBMITTED,

*/s/ Kristen Clarke*

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
Samuel Weiss* (NY Bar # 5383229)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K St. NW
Suite 900
Washington, DC 20005
(202) 662-8600
kclarke@lawyerscommittee.org

* Member of the NY bar only; practicing in
the District of Columbia under the
supervision of members of the D.C. Bar

while application for D.C. Bar membership is pending. *Pro hac vice* motion to be submitted.

Cyrus Mehri (D.C. Bar # 420970)
U.W. Clemon (D.C. Bar # AL0013)
Michael D. Lieder (D.C. Bar # 444273)
Joanna K. Wasik (D.C. Bar # 1027916)
MEHRI & SKALET, PLLC
1250 Conn. Ave., NW
Suite 300
Washington, DC 20036
(202) 822-5100
cmehri@findjustice.com

# EXHIBIT #1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFF MERKLEY,

    *Plaintiff*,

v.

DONALD J. TRUMP et al.,

    *Defendants*.

No. 17-cv-255 (TSC)

Electronically Filed

Hon. Amy Berman Jackson

**SUPPLEMENTAL DECLARATION OF SENATOR JEFF MERKLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Title 28 U.S.C. Section 1746, I, Jeff Merkley, hereby declare and state as follows:

1. I am deeply disturbed with the decline in the integrity of our institutions.

2. I could not believe that the President could proceed, after nominating Judge Kavanaugh, to prevent the Senate from having full access to his record.  Because of my earlier investigations during the nominations of Judge Merrick Garland by President Obama and of now-Justice Neil Gorsuch by President Trump, I had read and studied a great deal about the Founders' construction of the nomination and consent process.

3. I learned that the Founders deliberately designed the process to maximize the chance that individuals selected to serve in executive and judicial posts would be of "fit character."  They decided that the responsibility for nominating an individual should rest with one person, the President, because if assigned to an Assembly there would be too much horse trading between members of the Assembly.  But they also felt that there needed to be a check in case the

1

President should go off track and show inappropriate favoritism or select individuals unfit to serve.

4. The division of responsibilities created by the Founders requires that the Senate not be able to interfere with the nomination process, and that the President not be able to interfere with the confirmation process. But the latter is exactly what we see right now.

5. I took an oath of office to uphold the Constitution, which includes my responsibility to participate effectively in the process of reviewing Presidential nominees to determine if they are of fit character.

6. In no case do I consider this duty more important than for a nomination to the Supreme Court. This group of justices has final say over the interpretation of the Constitution. These positions are lifetime appointments. The views of each Justice will determine whether we truly have a government "of, by, and for the people" or whether it is one that makes interpretations of our Constitution bend in the direction of government by and for the powerful. The character of each Justice will determine whether the Supreme Court is viewed as a thoughtful unbiased institution capable of fair application of the Constitution.

7. There is a lot at stake.

8. And yet here I am, unable to review Judge Kavanaugh's full record because President Trump has exercised "presidential privilege" (interpreted to mean the same as "executive privilege") to keep me and my fellow Senators from seeing more than 100,000 pages of documents related to his service in the White House Counsel. We know that this was a critical time in which the nominee was involved in many issues. He was involved in the issues of torture. There are allegations that he was in receipt of stolen documents related to Senators' strategy related to nominations. He was involved in discussions of why individuals were suited or

unsuited to serve as judges. He wrote at least one email about whether *Roe v. Wade* was viewed as settled law. And he was undoubtedly involved in dozens of other important issues. Thus, there is much to be learned about his judicial temperament and judicial philosophy from those documents, as well as his truthfulness in discussing topics illuminated by those documents.

9. These documents were requested by the Chair of the Judiciary Committee. So the Senate, in a bipartisan manner, felt that these documents were relevant and important.

10. And yet the President has blocked them. What is in these documents that the President does not want the Senators to know? And on what grounds were these documents blocked? Surely the President does not have a unilateral right to decide how the Senate reviews the record of nominees. This would be a plain violation of the separation of powers and the checks on power that the Founders so carefully constructed in the Constitution.

11. To my knowledge, and to the knowledge of experts I have consulted, there is no precedent for the direct and extensive use of presidential privilege to block the Senate's ability to review a nominee's record.

12. And surely the reason it hasn't been done before is that other Presidents recognized that this would be a violation of the separation of powers.

13. My understanding is that there has been no explanation of why each of these 100,000 pages has been blocked. These documents pertain to when President Bush was in office, but the privilege is being asserted by President Trump on behalf of President Trump. In other words, we should be dubious that the assertion of this power has legitimacy given that the documents are not about confidential deliberations of the President asserting the privilege.

14. In addition, over 140,000 pages of documents have been designated as "committee confidential." I and other Senators who are not on the Judiciary Committee have

severely limited access to them. To my knowledge, and to the knowledge of experts I have consulted, there is no precedent for such extensive use of confidentiality designations to block most Senators' ability to review a nominee's record.

15. To my mind, such obstruction deeply damages the constitutional vision of separate processes of nomination and confirmation, and the latter serving as a check on the abuse or misguided utilization of the former.

16. The constitutional duty to provide advice and consent does not belong to one Senator or a small group of Senators. That duty is given to each of the 100 Senators. Like each of my colleagues, I have a responsibility to my constituents and my oath of office to carefully review the nominee's record and render an informed decision.

17. If the Senate is not given a chance to provide meaningful, informed advice and consent, the integrity of the confirmation process and the Supreme Court itself are severely compromised. If this president is permitted to blatantly interfere with the Senate's constitutional responsibilities to avoid scrutiny of his nominee's record, future presidents will have every incentive to do the same.

18. I know that asking the Court to intervene to protect the separation of powers and the integrity of the confirmation process is an unusual request. I have made this request because we have never seen such an extraordinary use of executive privilege to block the Senate's ability to review the relevant record of a nominee.

19. Prior to filing this lawsuit and motion, I frequently asked myself: when is it the right time to ask the Court to intervene?

20. In the Senate, the confirmation process has two phases. The first phase is consideration by the Senate Judiciary Committee. Eventually, the Committee votes on whether to forward a nominee to the entire Senate for consideration.

21. Because I am not on the Judiciary Committee, my role in this process began the moment that the Judiciary Committee voted to send the nomination to the full Senate for consideration. It is at that moment that my role was initiated and at that moment that my ability to review Judge Kavanaugh's full record was compromised by President Trump's use of "presidential privilege."

22. While I had initially filed the Complaint in the lawsuit on September 26, I chose not to ask for the Court's intervention at that time because I had reason to believe that judicial intervention might turn out to be unnecessary. The Judiciary Committee voted Judge Kavanaugh's nomination out of committee on Friday, September 28th. I filed the motion asking the court to intervene shortly thereafter after asking my counsel to carefully review the caselaw and the appropriate scope of relief.

23. I come to the Court as a last resort. I thought that it was such an unusual request that I should hold back until my role was directly obstructed. That became true the moment the Judiciary Committee voted the nominee out of Committee and thus turned over the issue to deliberation by the full Senate. This reflects the respect I have for the judicial process.

24. I seek the ability to faithfully carry out my obligation to provide advice and consent as the Constitution requires and as my constituents expect.

25. I believe, based on my experience in the Senate to date, that a limited order from this Court of the type that I have requested has the potential to positively impact the confirmation process. For example, such an order, even if issued shortly before a final vote on Judge

Kavanaugh takes place, when combined with other considerations suggesting the propriety of a brief delay, may prompt the Senate to postpone the final vote on his confirmation pending President Trump's production of the previously withheld privilege log or documents, or pending a more realistic opportunity for Senators to review documents marked as confidential. This will allow for the type of informed deliberative process that the Founders of our great Republic envisioned.

I, Jeff Merkley, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __4th__ day of October, 2018, in Washington, D.C.

_____
Jeff Merkley